UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DIANA BACA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-4043-SLD |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. | |

ORDER

Plaintiff Diana Baca's application for disability insurance benefits and supplemental security income was denied by an administrative law judge. She appealed that determination to this Court. This matter is now before the Court on Baca's Motion for Summary Judgment, ECF No. 9, and the Commissioner's Motion for Summary Affirmance, ECF No. 11. For the reasons set forth below, Baca's Motion for Summary Judgment is GRANTED, and the Commissioner's Motion for Summary Affirmance is DENIED.

BACKGROUND

Baca filed a claim for Disability Insurance Benefits and Supplemental Security Income on August 10, 2005, alleging disability beginning on June 16, 2004, due to bipolar disorder and back pain. Her claim was denied initially and upon reconsideration. A hearing was held on June 10, 2008, before Administrative Law Judge (ALJ) Alice Jordan. ALJ Jordan found Baca to have several severe impairments—degenerative disc disease, bipolar disorder, anxiety disorder, and a history of polysubstance abuse—but determined that she has the Residual Functional Capacity (RFC) to perform medium work, provided that she has only occasional interaction with co-workers, supervisors, and the public. The Appeals Council reviewed and remanded Baca's case,

vacating ALJ Jordan's decision, because the hearing recording could not be located and because the hearing decision did not contain an evaluation of the findings made by the state agency medical and psychological consultants. In particular, the Appeals Council pointed to Heinrich Jerrold, Ph.D.,'s opinion that Baca "had a moderate degree of limitation in maintaining concentration, persistence or pace," and that she "could understand, remember, and execute short and simple instructions consistently, that she needed a low-stress job where there are not tight time deadlines or high production quotas, and that [Baca] can adjust to routine changes in her environment as long as they are not too frequent." R. 90. The Appeals Council noted that the ALJ "is not bound by the findings of the State agency," but that the ALJ "may not ignore these opinions and must explain the weight given to these opinions in the hearing decision." *Id.*

A second hearing was held on November 2, 2010 before ALJ David Thompson. ALJ Thompson issued his decision on January 25, 2011; he found Baca to have the following severe impairments: degenerative disc disease, bipolar disorder, and anxiety disorder. Nevertheless, ALJ Thompson found that Baca has the RFC to perform medium work, except that she is limited to jobs with little change in the job process and limited to occasional contact with the public, co-workers, and supervisors. Baca now seeks review of the ALJ's final decision. Baca's arguments and all relevant medical evidence will be discussed below as needed.

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ Decision

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th

Cir. 2000).  To determine whether substantial evidence exists, the court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)).  Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  Even if reasonable could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported.  *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision."  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted).  Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning."  *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)).  Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions.  *Id.*  "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected."  *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)).

## II.   Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled.  Economic conditions, personal factors, financial considerations,

3

and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the plaintiff:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative

answer at step 3 will require the ALJ to make a finding about the plaintiff's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

Baca argues that the ALJ erred in two respects: by erroneously assessing Baca's RFC, and by failing to follow the remand order from the Appeals Council.

### I. ALJ's Assessment of Baca's RFC

RFC is an administrative assessment of what work-related activities an individual can perform despite his limitations. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In determining a claimant's RFC, the ALJ must consider all of the claimant's impairments, including impairments that are not severe, to the extent that they are supported by the medical evidence. 20 C.F.R. § 404.1545(a)(2). Here, the ALJ determined that Baca has the RFC to "perform medium work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c), except she is limited to jobs with little change in the job process; and, she is limited to occasional contact with the public, co-workers and supervisors." R. 28. Baca challenges the ALJ's RFC determination in three ways. First, she argues that the ALJ did not incorporate his finding of moderate difficulties with concentration, persistence, and pace into his RFC determination and into his hypothetical questions to the vocational expert (VE). Second, she argues that the ALJ did not properly weigh the evidence when making his RFC determination. Third, Baca claims that the

5

ALJ did not properly articulate his reasoning because he used boilerplate language in discussing his credibility determination.

### A. The ALJ did not properly account for Baca's difficulties with concentration, persistence in his questions to the VE

The ALJ found that Baca has moderate difficulties with concentration, persistence, and pace, but Baca claims that the ALJ's hypothetical questions to the VE did not account for that limitation. The Court agrees. The limitations of "jobs with little change in the job process" and "occasional contact with the public, co-workers, and supervisors" do not appear to account for problems with concentration, persistence, and pace, and are unlikely to alert a VE to those problems in a hypothetical. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

The ALJ must make the VE aware of the "totality of a claimant's limitations," *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009), which includes a claimant's deficiencies in concentration, persistence, and pace, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The most effective way for the ALJ to ensure the VE is fully apprised of the claimant's limitations is to include them in the hypothetical, but there is no *per se* requirement that the ALJ use these magic words ("concentration, persistence, and pace") in every case. *O'Connor-Spinner*, 627 F.3d at 620. For example, while an ALJ can sometimes use alternative phrasing to communicate the claimant's limitations to the VE, employing terms such as "simple, repetitive tasks" will not adequately exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace. *Id.*; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). A limitation to "simple, repetitive tasks" does not account for problems with concentration, persistence, and pace because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

6

Here, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." R. 28. In explaining this finding, the ALJ noted that Baca "reported that it was hard to concentrate because she had racing thoughts and her mind wandered. It was noted in both her Psychiatric Review Technique Assessment (PRT) and Mental Residual Functional Capacity (RFC) Assessment that the claimant had moderate difficulty in this area" R. 31 (citations omitted). Because he found that Baca has this limitation, the ALJ should have included it in his questions to the VE. Instead, the hypothetical posed to the VE only limited the subject to medium work, to "jobs with little change in the job process," and to "occasional contact with the public, co-workers, and supervisors." R. 66. This language tracks the ALJ's RFC determination for Baca. R. 28. The Court is unable to determine whether these limits adequately account for Baca's difficulties with concentration, pace, and persistence, because the Court is not able to determine what exactly is meant by "little change in the job process." *See Stewart*, 561 F.3d at 684 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings). Given this ambiguity, the phrase "little change in the job process" appears inadequate for the same reason a limitation to "simple, repetitive tasks" will not suffice: "[t]he ability to stick with a given task over a sustained period" is probably not the same as the ability to do a job in which there is "little change in the job process." *See O'Connor-Spinner*, 627 F.3d at 620.

The Court recognizes that the ALJ's failure to explicitly discuss concentration, persistence, and pace in his hypothetical will not always require remand. But in most cases, as this one, the ALJ should refer expressly to such limitations "in order to focus the VE's attention

7

on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 621. Since the VE's attention may not have been adequately focused on Baca's limitation, the Court is not assured that the VE's testimony constitutes substantial evidence of the jobs Baca can do. The case is therefore remanded to the ALJ to address this defect.

### B.  Whether substantial evidence supports the RFC

Baca also claims that this RFC is not supported by substantial evidence because it fails to account for many of her limitations. The Court agrees with respect to Baca's problems with concentration, persistence, and pace, because the ALJ's RFC determination suffers from the same problem as his questions to the VE. The RFC limits Baca to medium work, to "jobs with little change in the job process," and to "occasional contact with the public, co-workers, and supervisors." The Court is unable to determine whether these limitations adequately accommodate Baca's moderate difficulties with concentration, persistence, and pace; in other words, the bridge is out between the evidence and the ALJ's ultimate conclusions. The ALJ discussed Dr. Heinrich Jerrold's findings with respect to Baca's concentration, persistence, and pace, and explained why he found certain aspects of those findings unpersuasive. R. 33. He also noted that Baca "reported that it was hard to concentrate because she had racing thoughts and her mind wandered." R. 31. The Court cannot trace the ALJ's reasoning from those findings to the limitations he imposed in his RFC determination because the limitation, "jobs with little change in the job process," has not been adequately explained. *See Scott v. Barnhart*, 297 F.3d at 595.

On all other points, though, Baca essentially asks the Court to reweigh the evidence that the ALJ considered: she argues that her periods of hospitalization were not given due consideration, that the opinions of two treating psychiatrists were "dismissed," and that her Global Assessment of Functioning (GAF) should have been given greater weight. Contrary to

8

Baca's assertion, though, the ALJ did not fail to cite to evidence that is contrary to his RFC determination. Pl.'s Mot. Summ. J. 12. Rather, the ALJ discussed the evidence and his reasons for assigning certain evidence more or less weight.

For example, the ALJ noted that Baca's hospitalizations "were of relatively short duration and she recovered from her symptoms quickly, once placed on medications," before going on to discuss the hospitalizations in greater detail. R. 31. Given the relative infrequency of Baca's hospitalizations, the ALJ was not required to find—as Baca argues he was—that the hospitalizations would make it impossible for Baca to hold a job on an ongoing basis. *See* Pl.'s Mot. Summ. J. 9. The ALJ did not ignore this evidence just because he did not give it the weight that Baca would prefer.

Baca also argues that the ALJ dismissed the evidence of her GAF scores, "reasoning that [they] were either incorrect or caused by noncompliance with medication." Pl.'s Mot. Summ. J. 11. In general, GAF scores are "useful for planning treatment" but do not necessarily reflect a patient's functional level. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Rather, GAF scores reflect either severity of symptoms or functional level, whichever is worse. *Id.* Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Id.* (quoting *Wilkins v. Barnhart*, 69 Fed. App'x 775, 780 (7th Cir. 2003)). Rather than rely only on the bare numerical score, an ALJ is entitled to consider the clinician's narrative explanation of impairments that accompanies the score. *Id.* That is what the ALJ did here. The ALJ determined that the GAF scores were often not supported by the objective medical evidence in the record because they were inconsistent with contemporaneous positive reports of Baca's functioning, and so were not reflective of her functional ability. R. 36.

The ALJ also raised the possibility of noncompliance with medication as a way to explain the GAF scores. *Id.* Where the medical evidence in the record indicates that a mental condition is treatable and controlled by medication, or that a psychiatric condition has been stabilized, the ALJ may consider that evidence. *See Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) ("[C]ontrollable conditions do 'not entitle one to benefits . . . .'")). To the extent the ALJ relies on evidence of noncompliance on remand, however, the Court reminds him to consider any proffered reasons that might explain Baca's failure to take her prescribed medication. *See Spiva v. Astrue,* 628 F.3d 346, 351 (7th Cir. 2010) ("The [ALJ]'s reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the difficulty of keeping patients on their medications.").

Baca argues that the ALJ "dismissed" the opinions of two treating psychiatrists, Drs. Ritterhoff and Harpring, that were consistent with each other and with treatment notes. Pl.'s Mot. Summ. J. 10. In fact, the ALJ explained in great detail the reasons he discounted some of Dr. Ritterhoff and Dr. Harpring's opinions. For example, one of Dr. Ritterhoff's opinions was not afforded great weight because it "constitutes an administrative finding dispositive of the case. The document does not even contain a diagnosis or any medical findings." R. 34. Dr. Ritterhoff and Dr. Harpring each prepared a Mental Health Residual Functional Capacity Questionnaire for Baca in 2006, but the ALJ determined that neither constituted valid evidence because each had been modified by claimant's counsel. R. 35. The ALJ went on to discuss how, even if he did consider the opinions set forth in the questionnaires, they were inconsistent with each of the doctors' treating notes and with the objective medical and other evidence in the record. *Id.* "An ALJ may discount a treating physician's medical opinion . . . when [his] opinion is internally

inconsistent . . . as long as [the ALJ] minimally articulates his reasons for crediting or rejecting the evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (internal citations omitted). Here, the ALJ adequately explained his reasons for discounting some of Dr. Ritterhoff and Dr. Harpring's conclusions.

### C. The ALJ's boilerplate language

Baca also asserts that the case should be remanded due to the ALJ's use of the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Given the negative treatment this language has received, it is a wonder why ALJs use it at all, since it "implies that the ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 644 (7th Cir. 2012); *see also Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). Here, though, as required by SSR 96-7p, the ALJ provided specific reasons for his credibility finding, supported by the evidence in the record, and made clear the weight the ALJ gave to Baca's statements and the reasons for that weight. In particular, the ALJ explained why Baca's credibility on the stand was hurt by her roundabout admission to marijuana use. R. 34. The ALJ's use of boilerplate language here is more akin to a summarizing statement than a credibility determination itself.

In her Reply Brief, Baca challenges the ALJ's credibility determination in another way, claiming that he erred "when he misconstrued the medical evidence and testimony." Pl.'s Reply Br. 3. Whether or not it is "error to equate the ability to perform limited daily activities with the ability to perform substantial gainful activity," that is not what the ALJ did here. *Id.* Rather, the

ALJ described inconsistencies between Baca's claimed limitations and her admitted abilities in a general sense. Since that is the only specific challenge Baca makes to the ALJ's credibility determination, her argument on this point is unavailing.

## II. ALJ followed the remand order

Finally, Baca asserts that the ALJ did not follow the Appeals Council's remand order, but gives very little support for that assertion. Baca also claims that the remand order was not included in the administrative record. That is not true. As Commissioner points out, the remand order can be found at pages 90 and 91 in the record. The remand order directed the ALJ to evaluate the findings made by the State agency medical and psychological consultants, which he did. Therefore, the Court finds that the ALJ complied with the remand order, even though the Court also finds that he did not adequately account for Baca's limitation with regard to concentration, persistence, and pace.

## CONCLUSION

For the reasons described above, Baca's Motion for Summary Judgment, ECF No. 9, is GRANTED, and the Commissioner's Motion for Summary Affirmance, ECF No. 11, is DENIED. This case is REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion.

Entered this 27th day of September, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
